UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THEODORE F. INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV1327 HEA |
| | ) | |
| TERMINAL RAILROAD ASSOCIATION | ) | |
| OF ST. LOUIS PENSION PLAN FOR | ) | |
| NONSCHEDULE EMPLOYEES, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment on the Supplemented Administrative Record, [Doc. No. 47] and Plaintiff's Motion for Judgment on the Supplemental Administrative Record, [Doc. No. 51]. For the reasons set forth below, Defendant's Motion is granted and Plaintiff's Motion is denied.

Plaintiff brings this cause of action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq., alleging that Defendant, sponsor of the pension plan to which Plaintiff was a participant, failed to properly calculate his pension benefits, and improperly calculated the offset to his retirement benefits because of benefits he received from another employer, Union

Pacific. Plaintiff seeks recovery of the retirement benefits based on his calculations, prejudgment interest and attorney's fees and costs incurred in this action, pursuant to 29 U.S.C. § 1132(g).

Plaintiff and Defendant both filed motions for summary judgment, in which they argued that there were no genuine disputes of material fact and that they were each entitled to judgment as a matter of law. The Court denied the motions and allowed the parties time within which to supplement the record.

Currently before the Court is Plaintiff's Motion for Judgment on the Supplemented Administrative Record, [Doc. No. 51] and Defendant's Motion for Summary judgment on the Supplemented Administrative Record, [Doc. No. 47]. For the reasons set forth below, Defendant's Motion is granted and Plaintiff's Motion is denied.

**Standard of Review**

In *Metropolitan Life Insurance Co. v. Glenn,* 128 S.Ct. 2343, 2347-48 (2008), the Supreme Court acknowledged that in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111-13 (1998), the Court set out four principles as to the appropriate standard of judicial review under ERISA, § 1132(a)(1)(B), as follows: (1) A court should be "guided by principles of trust law," analogizing a plan administrator to a trustee and considering a benefit determination a fiduciary act,

*id.,* at 111-113; (2) trust law principles require *de novo* review unless a benefits plan provides otherwise, *id.,* at 115; (3) where the plan so provides, by granting "the administrator or fiduciary discretionary authority to determine eligibility," "a deferential standard of review [is] appropriate," *id.,* at 111; and (4) if the administrator or fiduciary having discretion "is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion,' " *id.,* at 115.  As the Supreme Court recently noted—

> *Firestone* deference[,] ... by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator, preserves the 'careful balancing' on which ERISA is based. Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from *de novo* judicial review.
>
> *Conkright v. Frommert,* 559 U.S. 506, 517, 130 S.Ct. 1640, 176 L.Ed.2d 469 (2010). Thus, although we require "explicit discretion-granting language" in an ERISA plan contained in a group health and welfare insurance policy, the policy need not use the word "discretion." *Hankins v. Standard Ins. Co.,* 677 F.3d 830, 835 (8th Cir.2012).

*Prezioso v. Prudential Ins. Co. of America,* 748 F.3d 797, 802-803 (8th Cir. 2014).

The relevant provisions of the Plan at issue provide:

***Standard of Review***. The Plan Administrator shall perform its duties as the Plan Administrator in its sole discretion shall determine is

appropriate in light of the reason and purpose for which the Plan is established and maintained. In particular, the interpretation of all plan provisions, and the determination of whether a Participant or Beneficiary is entitled to any benefit pursuant to the terms of the Plan, shall be exercised by the Plan Administrator in its sole discretion. Any construction of the terms of the Plan for which there is a rational basis that is adopted by the Plan Administrator shall be final and legally binding on all parties.

Any interpretation of the Plan or other action of the Plan Administrator made in good faith in its sole discretion shall be subject to review only if such an interpretation or other action is without a rational basis. Any review of a final decision or action of the Plan Administrator shall be based only on such evidence presented to or considered by the Plan Administrator at the time it made the decision that is the subject of the review. Any Employer that adopts and maintains this Plan, and any Employee who performs services for an Employer that are or may be compensated for in part by benefits payable pursuant to this Plan, hereby consents to actions of the Plan Administrator made in its sole discretion and agrees to the narrow standard of review prescribed in this section.

The Plan language clearly gives the administrator discretion, thus, the standard of review ordinarily would be under an arbitrary and capricious analysis. Plaintiff, however, argues procedural irregularities render the *de novo* standard inappropriate. Plaintiff claims that there was no effective delegation of discretionary authority to the plan administrator because there was no publication of Kerry Paubel as the plan administrator, despite the fact that Paubel was designated as the administrator by resolution of the Board of Directors of Terminal Railroad Association dated February 20, 2002. In support of his position, Plaintiff

relies on *Jobe v. Medical Life Ins. Co.,* 598 F. 3d 478, 479 (8th Cir. 2010). In *Jobe,* Plaintiff successfully argued that the *de novo* standard should be applied because the Plan itself did not afford the administrator discretion, rather, the delegation of discretionary authority was only conferred in the Plan Summary Description. As such, the Court found that the administrator was not properly given discretion to interpret the plan. This ruling does not run contrary to the current matter. The plan herein specifically details the administrator's discretionary authority. *Jobe* is therefore inapposite. \

The Court agrees with Defendant that Plaintiff has failed to demonstrate how the failure to disclose the administrator would render the customary standard of review inapplicable. Plaintiff does not establish any prejudice by reason of the failure to publish the administrator, nor does Plaintiff identify how this technical failure negates the Administrator's delegated discretion which is fully articulated in the Plan.

Plaintiff also claims Paubel engaged in a material procedural irregularity.

> Minor procedural defects in the review process do not carry significant weight in [the court's] review of a plan administrator's decision to deny benefits. See *Trs. of Electricians' Salary Deferral Plan v. Wright*, 688 F.3d 922, 927 (8th Cir.2012). To alter the standard of review or affect [the court's] review under the abuse-of-discretion standard, a procedural irregularity must rise to the level of a " 'serious breach of the plan trustee's fiduciary duty to the plan beneficiary.' " *Menz v. Procter & Gamble Health Care Plan*,

> 520 F.3d 865, 869 (8th Cir.2008) (quoting *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir.1996)). The procedural error must leave "the court with serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Buttram,* 76 F.3d at 900; see also *Wright*, 688 F.3d at 927.

*Waldoch v. Medtronic, Inc*. 757 F.3d 822, 830-831 (8th Cir 2014)(footnote omitted).

Plaintiff claims that Paubel acted with a material conflict of interest as the Chief Financial Officer of the Railroad. "Where a fiduciary both evaluates claims for benefits and pays benefits claims, the court still applies the deferential abuse-of-discretion standard, but the fiduciary's conflict of interest is one factor to be considered in the review. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 112, 115–18, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)." *Hampton v. Reliance Standard Life Ins. Co.*, __F.3d __, 2014 WL 4977397 (8th Cir. 2014).

In support of this argument, Plaintiff cites *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). *Glenn*, however, dealt with an administrator who both evaluates the claim and pays benefits. Such is not the situation in the present case. The mere fact that Mr. Paubel is the Chief Financial Officer in no way equates with an administrator who also pays benefits. See *Anderson v. U.S. Bancorp*, 484 F.3d 1027, 1032-1033 (8th Cir. 2007)

> We believe that the mere fact of the cited employment relationship is not sufficient to support a finding of a conflict of interest. *See Brandis v. Kaiser Aluminum & Chem. Corp.,* 47 F.3d 947, 950 (8th Cir.1995) (employee can serve a dual role as employee and plan fiduciary) (citing 29 U.S.C. § 1108(c)(3)); *see also Barnhart v. UNUM Life Ins. Co.,* 179 F.3d 583, 588 (8th Cir.1999) ("ERISA itself contemplated the use of fiduciaries who might not be entirely neutral"). Further, the Committee members dual status does not present the type of personal conflict of interest which has been found to warrant consideration of less deferential review. *See, e.g., Armstrong v. Aetna Life Ins. Co.,* 128 F.3d 1263, 1265 (8th Cir.1997) (claim reviewers paid incentives and bonuses based upon criteria that included "claim savings").

*Id.* Plaintiff has presented no evidence that Paubel's employment with the Railroad caused a conflict of interest with regard to the determination of Plaintiff's benefits.

Additionally, Plaintiff attempts to create a "procedural irregularity" by arguing that Paubel, in 2006, estimated the amount Plaintiff should be given for moving expenses. As Defendant correctly points out, the estimated amount was made years before the administrative proceeding and was determined by Paubel not as the administrator of the plan, but rather in his role as an employee of the Railroad. Thus, Plaintiff cannot establish a procedural irregularity with the administrative process.

The Court concludes that Plaintiff has failed to present sufficient evidence to render the abuse of discretion standard inapplicable.

Under the abuse of discretion standard, the Court's "role in reviewing for abuse of discretion is not to "weigh the evidence anew" and render a decision. *Id*. at 1053. We only ask whether a reasonable person could reach the decision [the administrator] reached and whether the decision was supported by substantial evidence in the record. See *Midgett,* 561 F.3d at 897. *Waldoch v. Medtronic, Inc*. 757 F.3d 822, 829 -834 (8th Cir. 2014).

Plaintiff argues that the administrator abused his discretion in the determination that the $85,000 payment, grossed up for taxes, was reimbursement for moving expenses, and therefore excludable from Plaintiff's claim. Although there are references to this payment as a "sign on bonus," Paubel concluded it was reimbursement for moving expenses. Paubel considered the affidavit of Ms. Shannon Nouri, Defendant's Director of Human Resources, Corporate Secretary and Assistant to the President, which provides, in pertinent part:

> 1. Mr. Broyles [president of TRRA] instructed me to consult with Kerry Paubel, the Company's Chief Financial Officer, and determine a reasonable amount to be paid to Mr. Ingram to compensate him for the costs of moving. Mr. Broyles stated that Mr. Ingram was to be paid a lump sum to compensate him for relocation expenses and that this would be easier administratively for the Company than requiring documentation and reimbursement of specific expenses.
>
> 2. Mr. Paubel and I determined that $85,000 would be an appropriate amount to compensate Mr. Ingram for relocation and Mr. Paubel calculated an additional amount to be paid as a "gross up" for taxes Mr. Ingram would incur on $85,000. Mr. Ingram was paid

$142,737.20, reflecting the $85,000 in compensation for relocation and the gross up on that amount.

And the affidavit of Mr. Broyles:

3. Mr. Ingram and I agreed that he would be paid a lump sum amount that would be approximately equal to the moving expenses that would be reasonably incurred by an executive relocating from California to St. Louis.

While Plaintiff submitted an affidavit wherein he avers that the payment was a sign on bonus, Plaintiff's belief was one factor to be considered by the administrator alone with the other evidence before him. The administrator is empowered with the discretion to determine claims and this Court's function is to determine if one could, i.e. in keeping within the perimeters of applicable standard, reasonably conclude that the amount was given to Plaintiff for his moving expenses. The Court's

> review for abuse of discretion examines whether the plan administrator's decision " 'was supported by substantial evidence, meaning more than a scintilla but less than a preponderance.' " *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir.2009) (quoting *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir.2000)). A decision "supported by a reasonable explanation ... should not be disturbed, even though a different reasonable interpretation could have been made." *Id.* (internal quotation marks omitted). Though we afford a plan administrator's decision great deference, an administrator cannot simply ignore relevant evidence or " 'arbitrarily refuse to credit a claimant's reliable evidence.' " See *Willcox v. Liberty Life Assurance Co.*, 552 F.3d 693, 701 (8th Cir.2009) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)).

*Waldoch,* 757 F.3d 832-833.

Plaintiff argues that the terms of the Plan are to be construed in accordance with the Internal Revenue Code. As Defendant correctly argues, however, Section 17.6 provides:

> 0.1 ***Rules of Construction.*** The terms and provisions of this Plan shall be construed according to the principles and in the priority as follows: first, in accordance with the meaning under, and which will bring the Plan into conformity with the Code and with ERISA; and, secondly, in accordance with the laws of the State of Missouri. The Plan shall be deemed to contain the provisions necessary to comply with such laws. If any provision of this Plan shall be held illegal or invalid, the remaining provisions of this Plan shall be construed as if such provision had never been included. Wherever applicable, the masculine pronoun as used herein shall include the feminine, and the singular shall be the plural.

Thus, this provision is simply protection against disqualification of the plan under ERISA or the Internal Revenue Code. It does not require that the $85,000 payment be necessarily construed under the Code.

Plaintiff also attempts to establish an abuse of discretion by arguing that because the payment was reported as compensation on his 2006 W-2, it must be construed as a sign on bonus and not as moving expenses. The administrator's conclusion does not run afoul of his discretion. Because Plaintiff was given an estimated amount without having to account for the expenses, the amount was properly included in his W-2 for tax purposes.

Plaintiff also argues that the administrator abused his discretion in the

amount used to offset Plaintiff's Union Pacific retirement benefit.  Section 5.1 of the Plan provides that Plaintiff's Normal Retirement Benefit must be reduced for an offset determined according to Section 5.5 of the Plan.  Section 5.5 provides:

> 5.5 Benefit Offset. Notwithstanding anything to the contrary in the Plan:
>
> The retirement income benefit payable under this Plan shall be offset by the amount of retirement income payable under any other defined benefit plan maintained by or contributed to by any member of the Controlled Group that is qualified under Section 401 of the Code to the extent that the benefit under such other plan or plans is based on Benefit Service taken into account in determining benefits under this Plan; and
>
> The retirement income benefit payable under this Plan shall be offset by the amount of retirement income payable under any other defined benefit plan maintained by any other Company or agency that is not a member of the Controlled Group that is qualified under Section 401 of the Code to the extent that the benefit under such other plan or plans is based on Benefit Service taken into account in determining benefits under this Plan.
>
> In the event the benefit under such another plan is paid in a form other than the form of payment under this Plan, including without limitation a single lump sum cash payment made prior to retirement, the amount of such offset shall be the dollar amount per month of the benefit that would have been payable under such other plan in the form of a Single Life Annuity commencing on the Participant's Normal Retirement Date.

The Plan administrator determined that Plaintiff's benefit should be reduced by the amount Plaintiff would have received at the normal retirement age of 65, rather than the amount actually paid to Plaintiff by reason of his early retirement.

Under the abuse of discretion standard, the Court must determine whether this interpretation of Sections 5.1 and 5.5 was reasonable.

> Applying the abuse-of-discretion standard, an "administrator's interpretation of uncertain terms in a plan 'will not be disturbed if reasonable.' " *Id.* at 999 (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). In *Finley v. Special Agents Mut. Ben. Ass'n,* 957 F.2d 617, 621 (8th Cir.1992), our court developed factors to assess the reasonableness of an administrator's decision. Under *Finley,* we consider whether the "administrator's interpretation (1) is consistent with the plan's goals; (2) renders any of the plan language meaningless or internally inconsistent; (3) conflicts with the substantive or procedural requirements of ERISA; (4) has been followed similarly in the past; and (5) is contrary to the clear language of the policy." *Khoury v. Grp. Health Plan, Inc.,* 615 F.3d 946, 954 (8th Cir.2010) (citing *Finley,* 957 F.2d at 621). Though these factors "inform our analysis," " '[t]he dispositive principle remains ... that where plan fiduciaries have offered a "reasonable interpretation" of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an "abuse of discretion" the challenged benefits determination.' " *King*, 414 F.3d at 999 (alterations in original) (quoting *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1188 (4th Cir.1989)).

*Kutten v. Sun Life Assur. Co. of Canada* 759 F.3d 942, 944 (8th Cir. 2014).

Plaintiff chose to accept an early retirement benefit from the Union Pacific Plan. The administrator, however, interpreted 5.5 as requiring the offset to be equal to the amount payable at the normal retirement age rather than the amount Plaintiff actually received through exercising the earl retirement option. Applying the *Finley* factors, the Court concludes that the administrator's decision was not arbitrary and capricious. The Plan's clear language provides that the offset is

equal to the amount "payable" to a recipient under another plan. Likewise, this interpretation is consistent with the Plan's goals in that it applies a formulation equally to all recipients, rather than affording a greater benefit to those individuals electing to take an early retirement benefit over those who do not. No plan language is rendered internally inconsistent by the administrator's interpretation. As Defendant argues, the amount of the Normal Retirement Benefit under the Plan does not vary as a result of the choice of form of payment under another defined benefit plan. Plaintiff has not presented any authority to demonstrate that the Plan administrator's interpretation is inconsistent with ERISA, nor does he assert that this interpretation has not been taken in the past. Based on these factors, the administrator's determination was indeed reasonable, and therefore, this Court must affirm his decision.

The Court's analysis of the administrator's determinations with respect to Plaintiff's claims is limited to ascertaining whether the administrator's decisions were reasonable. The Court may substitute any conclusions it may have reached were it to have decided Plaintiff's claims. Rather, the Court must apply the deferential standard. Focusing solely on the evidence available to the administrator at the time of the decision, the Court concludes that a reasonable person could have arrived at the conclusions reached. As such, the administrator's

decision may not be set aside.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on the Supplemented Administrative Record, [Doc. No. 47], is granted

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Judgment on the Supplemental Administrative Record, [Doc. No. 51] is denied.

A separate judgement in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 23rd day of October, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE